STATE ex rel. FIRST NATIONAL BANK OF MORRIS, OKLAHOMA, Respondent, v. FEDERAL UNION SURETY COMPANY, Appellant.

**Kansas City Court of Appeals, May 15, 1911.**

1. **PRINCIPAL AND SURETY: Release: Composition.** Plaintiff sued on a warehouse bond given by defendant as surety. The principal went into bankruptcy, and was discharged from liability by a composition with its creditors. *Held* that under sec. 16, Bankruptcy Act of 1898, the release of the principal in bankruptcy did not operate to release the surety on the bond.

2. ———: **Judgment: Joint and Several Bond.** Where the bond is joint and several judgment may be taken against the surety without first proceeding against the principal.

3. ———: **Warehouse: Fraud.** Where it is shown that the property described in a warehouse receipt was not found in the warehouse and not accounted for, the jury may presume that the receipt was fraudulently issued, and that the property was not in the warehouse when it was given.

Appeal from Jackson Circuit Court.—*Hon. E. E. Porterfield,* Judge.

AFFIRMED.

*Samuel Dowden, Frank Hagerman* and *Kimbrough Stone* for appellant.

(1) The judgment in favor of defendant, Merchants Refrigerating Company, and against defendant, Federal Union Surety Company, cannot stand. Bunn v. Jetmore, 70 Mo. 228; North St. Louis B. & L. Assn. v. Obert, 169 Mo. 507; In re Wiseman, 123 Fed. Rep. 185; Hibbard v. Bailey, 129 Fed. Rep. 575; Lobaugh v.

Thompson, 74 Mo., 600; Sewing Machine Co. v. Maxwell, 63 Mo. 486; Gates v. Tebbetts (Neb.), 119 N. W. Rep., 1120, 20 L. R. A. (N. S.) 1000. (2)   Security released by acts of plaintiff.   Bankruptcy Act of 1898, sec. 57 (30 Stat. at L. 560) ; In re Bear, 5 Fed. Rep. 53; Ex parte Morris, 17 Fed. Cas., 783, 784 (case No. 9823).   (3) Composition.   In re Levy, 110 Fed. Rep.   744.   (4) There is no evidence to sustain judgment.

*H. M. Beardsley* and *W. A. Medill* for respondent.

(1)   Suit was brought here against both principal and surety, the principal escaped judgment because of discharge in bankruptcy which it pleaded.   That fact in nowise prevented taking judgment against the surety. Fisse v. Einstein, 5 Mo. App. 78; Manny v. Security Co., 103 Mo. App. 716; Brandt on Suretyship and Guaranty (3 Ed.), sec. 110; 16 Ency. Plead. and Practice, p. 937; Bankruptcy Act 1898, sec. 16a; McCombs v. Allen, 82 N. Y. 114; Bankruptcy Act, sec. 14c; in re Jersey Island Packing Co., 152 Fed. 839; Wolf v. Stix, 99 U. S. 7.   (2)   The rights of relator under his warehouse receipt were not released by the manner in which his claim was proved in the bankruptcy proceedings.   Loveland on Bank (3 Ed.), sec. 202; Remington on Bank, sec. 748; Collier on Bank (7 Ed.), 8c; Bankruptcy Act 1898, sec. 1 (23).   Relator's right to sue appellant on the warehouseman's bond was not destroyed by the confirmation of the composition in the refrigerating company's estate.   Moore v. Stanwood, 98 Ill. 605; Bankruptcy Act 1898, sec. 16a; In re Burchell, 4 Fed. 406; Guild v. Butler, 122 Mass. 500; Fisse v. Einstein, 5 Mo. App. 78.   There was evidence to sustain the judgment. Bank v. Bank, 116 Ala. 520; Higman v. Commody, 112 Ala. 267; Wigmore on Evidence, Vol. 4, Sec. 2508.   Dolan v. Clark, 23 Nev. 203; Wilson v. McVey, 83 Ind. 108; Rhinelander v. Barrow, 17 John (N. Y.) 538.

BROADDUS, P. J.—As the parties do not disagree materially as to the facts we will present the case as made up from their statements.

The suit is by the relator, First National Bank of Morris, Oklahoma, on a warehouse bond given by the Merchants Refrigerating Company as principal, and the Federal Union Surety Company as surety. The loss alleged thereunder being founded on the value of butter covered by a warehouse receipt, but which could not be found on the demand of the relator. The breach alleged is that the butter was not on hand at the time of the issuing of the receipt therefor by the Refrigerating Company, or, that if it, or any portion of it was in the possession of the said company at the time it was sold without the consent of relator with the intent to cheat and defraud relator. The company after a general denial of the allegations of the petition, pleaded that relator had proved its claim in bankruptcy against the estate of that defendant; that there had been a composition of the creditors with the bankruptcy estate and that therefore it was discharged of all liability under said bond or on account of said receipt.

The defendant, surety company, filed a similar answer and in addition thereto, that relator had proved up its claim against the bankrupt estate of the principal, the refrigerating company, and had entered into a composition of the creditors of that estate; that there had been issued to it the dividend in accordance with that composition; that relator had also proved its claim against the bankrupt estate of the Willow Grove Creamery Company, had its claim allowed and received and accepted a dividend thereon and that it was, therefore, estopped from urging any claim against the surety or on the bond; the same plea was made concerning the bankrupt estate of James E. Brady as in the instance of the Willow Grove Company.

The facts shown by the evidence were substantially that defendant Merchants Refrigerating Company on

May 16, 1907, issued to the Willow Grove Company a warehouse receipt, stating that the creamery company had, at that date, stored and deposited with the refrigerating company two hundred and fifty tubs of butter with certain marks, and which butter was held in storage for the account of the creamery company. That about September 16, 1907, the Willow Grove Company executed its certain promissory note for two thousand two hundred and fifty dollars to the order of the Merchants Refrigerating Company, the said note having attached as collateral security the warehouse receipt referred to. That said note was endorsed in blank by J. E. Brady and was purchased by the relator for the sum of two thousand one hundred and one dollars . . and that relator made an effort to locate the butter without success.

It appears that afterwards the estate of the refrigerating company was placed in bankruptcy and the company duly declared a bankrupt. In Feburary, 1908, said company made an offer of composition with its creditors whereby it agreed to deliver to the trustee in bankruptcy for its creditors, all of its property of every kind to be distributed and delivered to such of its creditors as should prove up their claims under the supervision and direction of the bankruptcy court. Subsequently the offer of composition having been accepted by a majority of the creditors in number and interest, the same was duly confirmed and the company thereby discharged. It was shown that relator filed his claim in said proceeding and that it was duly allowed. The payment of the creditors was made in the bonds and stock of what was known as the Mid-Continent Refrigerating Company. The relator refused to receive said bonds and stocks in payment of his demand.

The Willow Grove Company and James E. Brady were also adjudged bankrupts. The relator filed his demand against each of these estates which was allowed, and it received from the estate of the former $71.97.

But he received nothing from the estate of Brady.    The
surety company offered to prove the value of the shares
of stock and bonds of the Mid-Continent Refrigerating
Company, but the offer was refused by the court.    The
relator presented its claim in the bankruptcy court—the
note in question stating; that the same was secured by
said warehouse receipt; that the same was the only se-
curity it had, and declined to surrender it but expressed
its willingness to credit all sums received therefrom on
this debt.

The court on behalf of plaintiff instructed the jury
as follows: "If the jury find from the evidence that the
signature upon the note in evidence and the endorse-
ments thereon are genuine, and that the First National
Bank of Morris, Oklahoma, became the owner and holder
of said note by purchase, on or about the 19th day of
September, 1907, and received said note together with it ·
the warehouse receipt which is in evidence, and that said
bank bought said note relying upon the security offered
by the warehouse receipt, and that the butter in · said˙
warehouse receipt described was not at the time the prop-
erty in warehouse 'A' went into the hands of receiver Sex-
ton, or thereafter, in said warehouse, and has not been
accounted for by the Merchants Refrigerating Company,
then in that event you will find your verdict for the
plaintiff, and against defendant Federal Union Surety
Company."

The court also instructed the jury if they found for
plaintiff they would allow a credit for the amount of
the dividend received from the estate of the Willow
Grove Creamery Company.  ˙ The court directed the jury
to return a verdict for the refrigerating compay.

The defendant surety company asked the court to
instruct the jury to the effect; that the burden rested up-
on plaintiff to show that the butter was in the posses-
sion of the refrigerating company at the time the ware-
house receipt was issued and that it was subsequently,
and prior to the time the receiver in bankruptcy took

possession of the estate of said company, fraudulently sold and disposed of by said company, with intent to cheat and defraud plaintiff, and without the consent of the holder of said warehouse receipt at the time it was so sold and disposed of.

The jury returned a verdict in favor of the principal on the bond and in favor of the relator against the surety company in the sum of $2367.57, upon which judgment was rendered and from which the latter appealed.

It is first contended by appellant that as the court gave the peremptory instruction in favor of the refrigerating company, the principal in the bond sued on, there could be no judgment against the appellant surety thereon.

That the act of relator in proving up its claim against the three estates, viz.: The Merchants Refrigerating company, J. E. Brady, and the Willow Grove Creamery Company, and the manner in which the proof was made, the relator thereby released all claims under the bond in suit.

That the relator is bound by the said composition, and that as the composition released the principal on the warehouseman's bond, it also released the appellant surety thereon.

That the relator failed to prove either of the breaches alleged in his petition.

Appellant argues that, "it is a legal impossibility for the principal to be held not liable on the bond and the surety to be held liable. This is true because the surety's liability arises solely through the default of the principal and if the principal is not liable for the default contemplated by the bond the surety, of course, cannot be liable under the bond." As a general rule the position of the appellant is sound. Such being the case it is not necessary to review the authorities cited in its support. It seems to us it is not a question whether the principal was liable and the surety also, on the original.

undertaking of the bond in suit, but whether a discharge of the principal from liability released the surety. And it may be also conceded generally, that any act of the obligee of the bond that operates to discharge the principal will have the effect of releasing the surety.

Many of the authorities cited by appellant are to the effect that if the principal is not bound, the surety also is not bound; but that is not the question in the case, for both principal and surety were bound by the terms of their bond. The fact that the principal was discharged from its liability on the debt did not operate in any manner to discharge appellant surety. The act reads: "The liability of a person who is a co-debtor with, or guarantor, or in any manner a surety for a bankrupt, shall not be altered by the discharge of such bankrupt." [Section 16, Bankruptcy Act of 1898.]

The appellant's position is, nothwithstanding the unqualified provision of the Federal Statute we have quoted, a creditor who participates in the bankruptcy proceedings by exhibiting his demand against the estate in the hands of the court and receives the benefit of his pro rata share in such estate releases whatever security he may have for the debt thus discharged. Whether relator had participated in the composition of the creditors with the bankrupt would be construed as an act on its part releasing the principal from liability is not before us, as no such participation was shown. But as it is held that where composition with creditors is had that: "Whilst the debtor is exonerated, the remedy against sureties remains in full force. . . . The extinction of the obligation, to be sure, extinguishes the liability of the surety when the debt is extinguished by the voluntary act of the creditor, but the surety is never released by causes—such as bankruptcy, or a forced composition under a bankruptcy act which originates in law, against the creditor's will." [Fisse v. Einstein, 5 Mo. App., 78; Moore v. Stanwood, 98 Ill., 605; In re Burchill, 4 Fed.

406; Guild v. Butler, 122 Mass. 498.] In re Levy, 110 Fed. 744, cited by appellant has no application whatever to the question.

Under the Federal Statute: "Proof of claims shall consist of a statement under oath, in writing, signed by a creditor setting forth the claim, the consideration therefor and whether any, and if so, what securities are held therefor, and whether any, and if so, what payments have been made thereon, and that the sum claimed is justly owing from the bankrupt to the creditor.

"Claims of secured creditors and those who have priority may be allowed to participate in the proceedings at creditors meetings held prior to the determination of the value of their securities or priorities, but shall be allowed such sums only as to the courts seem to be owing over and above the value of their securities or priorities." And it is further provided, that the value of the security shall be credited upon such claim and dividends shall be paid only on the unpaid balance. [Sec. 57 Bankruptcy Act 1898 (30 Stat. at L. 560.)]

The statute in referring to secured creditor does not mean collateral securities but the language is, "Secured creditor shall include a creditor who has security for his debt upon the property of the bankrupt of a nature to be assignable under this act, or who owns such a debt for which some indorser, surety, or other persons secondarily liable for the bankrupt has such security upon the bankrupt's assets." [Act 1898, section 1, Sub. 23.] As relator's claim was purely collateral he was not amenable to the provision aforesaid and nothing he did or omitted to do with reference to his security prejudiced his rights in any respect. This section of the act has been construed by the courts, but as its meaning is so evident, we have refrained from calling attention to their decisions.

It would be difficult to realize as true the contention of appellant; that because the judgment in question was for the principal in the bond there could be no lawful judgment against the surety. We hope appellant will

not take any offense if we call the reasons advanced to sustain its theory mere sophistry.

Under the statute of this state the bond was joint and several. And it is held where suit was brought against both principal and surety and suit dismissed as to the principal, that judgment could be taken against the surety without first proceeding against the principal. [Manny v. National Union Surety Company, 103 Mo. App. 716; Brandt on Suretyship & Guaranty, Section 110.]

Was there evidence sufficient to sustain the allegation of the petition as to the breaches of the bond? It seems to us that as it was shown that the butter was not in the warehouse of the refrigerating company at the time it was called for, it follows as a necessary sequence that it was not there at the time the receipt was given or that it was taken away afterwards. One of the other is bound to be true. But appellant contends that it may have been taken away without the knowledge or against the consent of the company. And there was a suggestion that such was the case, but no evidence was offered to prove it. The butter not having been found in the warehouse and not accounted for was sufficient to authorize the jury to presume that the receipt was fraudulently issued and that the butter was not at the time it was given in the warehouse. The pleading is in the alternative and the proof of either was sufficient.

The technical defenses relied on by the appellant to defeat the honest demand of the respondent do not commend themselves to the conscience of the court. That the judgment was righteous is undeniable and for that reason if for no other it ought to be affirmed. Affirmed. All concur.